IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LEE ANNE M., | * | |
| Plaintiff, | * | |
| vs. | * | Civil Action No. ADC-18-1870 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,[1] | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

On June 22, 2018, Lee Anne M. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint, the parties' cross-motions for summary judgment (ECF Nos. 16, 17), and the response thereto (ECF No. 19), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 16) and Defendant's Motion for Summary Judgment (ECF No. 17) are DENIED, the decision of the SSA is REVERSED IN PART, and the case is REMANDED to the SSA for further analysis in accordance with this opinion.

### PROCEDURAL HISTORY

On November 6, 2013, Plaintiff filed a Title II application for DIB, alleging disability

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner of Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

1

beginning on September 27, 2013. Plaintiff also filed a Title XVI application for SSI on November 6, 2013, alleging disability beginning on September 27, 2013. Her claims were denied initially and upon reconsideration on March 28, 2014 and January 15, 2015, respectively. Subsequently, on March 9, 2015, Plaintiff filed a written request for a hearing and, on July 22, 2015, an Administrative Law Judge ("ALJ") presided over a video hearing. On August 4, 2015, the ALJ rendered a decision ruling that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act [(the "Act")], from September 27, 2013, through the date of this decision." ECF No. 10-3 at 42. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on December 22, 2015, the Appeals Council denied Plaintiff's request for review. On January 8, 2016, Plaintiff filed her first action for judicial review in this Court (Civil Action No. SAG-16-0065). The parties filed a consent motion for remand on November 8, 2016, and the Court granted the motion the same day, remanding the case for further administrative action.

On May 11, 2017, the ALJ presided over a video hearing. On June 22, 2017, the ALJ rendered a decision denying Plaintiff's claims for DIB and SSI in part, ruling that Plaintiff "was not disabled prior to January 22, 2016, but became disabled on that date and has continued to be disabled through the date of this decision." ECF No. 10-9 at 26. Thereafter, Plaintiff filed exceptions to the ALJ's decision and, on May 22, 2018, the Appeals Council declined to assume jurisdiction because the ALJ adequately complied with this Court's remand order. Thus, the decision rendered by the ALJ became the final decision of the SSA. *See* 20 C.F.R. § 416.1481 (2018); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On June 22, 2018, Plaintiff filed the Complaint in this Court seeking judicial review of the SSA's denial of her disability application. On December 20, 2018, Plaintiff filed a Motion for Summary Judgment, and Defendant filed a Motion for Summary Judgment on February 19, 2019.

On March 5, 2019, Plaintiff responded to Defendant's motion.[2] This matter is now fully briefed and the Court has reviewed both parties' motions.

## STANDARD OF REVIEW

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the [SSA]'s finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court is not whether the plaintiff is disabled, but whether the ALJ's finding that the plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) ("[A] reviewing court must uphold the [disability] determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." (citation and internal quotation marks omitted)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal citations and

---

[2] On March 29, 2019, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

3

quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal citations and quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB and SSI, a claimant must establish that she is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant shall be determined to be under disability where "h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding

4

of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular

and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *2–13 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *6–8.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482

U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, with regard to Plaintiff's DIB claim, the ALJ preliminarily found that Plaintiff met the insured status requirements of Title II of the Act through March 31, 2016. ECF No. 10-9 at 16. The ALJ then performed the sequential evaluation and found at step one that Plaintiff "ha[d] not engaged in substantial gainful activity since [September 27, 2013,] the alleged onset date." *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: "s/p cerebrospinal fluid leak; degenerative disc disease; attention deficit hyperactivity disorder (ADHD); anxiety; and vertigo." *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 17. At step four, the ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: [Plaintiff] is limited to the performance of routine, repetitive tasks. [Plaintiff] must avoid unprotected heights and dangerous machinery. [Plaintiff] can bend, stoop or squat

7

occasionally. [Plaintiff] will be on task 85% or more of the workday.

*Id.* at 19. The ALJ then determined that Plaintiff has been unable to perform any past relevant work since the alleged onset date. *Id.* at 24. Finally, at step five, the ALJ noted that "[p]rior to January 22, 2016, the date [Plaintiff]'s age category changed, considering [Plaintiff]'s age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." *Id.* at 25. Thus, the ALJ concluded that Plaintiff "was not disabled prior to January 22, 2016, but became disabled on that date and has continued to be disabled through the date of this decision." *Id.* at 26.

## DISCUSSION

Plaintiff raises three allegations of error on appeal: (1) that the ALJ failed to properly weigh and evaluate the medical opinion evidence; (2) that the ALJ's adverse credibility determination is not supported by substantial evidence because the ALJ applied an improper legal standard to discredit Plaintiff's subjective symptoms in violation of *Lewis v. Berryhill*, 858 F.3d 858 (4th Cir. 2017); and (3) that the RFC determination is not supported by substantial evidence because the ALJ failed to explain his finding that Plaintiff will be on task 85% or more of the workday. The Court agrees with Plaintiff's third argument, but Plaintiff's first and second arguments lack merit. Each alleged error is addressed below.

### A. The ALJ Erred At Step Four Of The Sequential Evaluation.

The Court will first discuss Plaintiff's two allegations relating to the ALJ's evaluation of the medical opinion evidence and Plaintiff's credibility, and then the Court will proceed to the ALJ's RFC determination, which Plaintiff asserts is also erroneous.

1. **The ALJ Properly Evaluated The Medical Opinion Evidence And Sufficiently Explained His Decision As To Weight Given.**

Plaintiff argues that the ALJ erred in assigning the opinions of Plaintiff's treating physician and chiropractor "little weight," while assigning the non-treating, non-examining state agency medical consultants' opinions "significant weight," and failed to properly weigh and evaluate the medical opinion evidence in accordance with the regulatory factors set forth in 20 C.F.R. §§ 404.1527 and 416.927. ECF No. 16-2 at 14–23.

Under the treating physician rule, an ALJ must generally give a treating physician's opinion "more weight . . . since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "When the treating source has seen [the patient] a number of times and long enough to have obtained a longitudinal picture of [the patient's] impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be afforded significantly less weight. *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017) (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). Moreover, an ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(d)(1). If a treating source's opinion is not given controlling weight, the ALJ must consider the following factors in deciding the appropriate weight to give the treating source's opinion: (1) the length and frequency of the treatment relationship; (2) the nature and extent of the treatment relationship; (3) the amount of evidence supporting the physician's opinion; (4) the consistency of the opinion with

9

the record as a whole; (5) whether the physician is a specialist giving an opinion about his area of specialty; and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)–(6). An ALJ need not apply these factors in a mechanical fashion, so long as the ALJ articulates the reasoning behind the weight accorded to the opinion. *Carter v. Astrue*, No. CBD-10-1882, 2011 WL 3273060, at *6 (D.Md. July 27, 2011).

*Opinions of Dr. Walsh and Dr. Lane*

After reviewing the letters submitted by Dr. Amy Walsh, Plaintiff's treating physician, and Dr. Daniel Lane, Plaintiff's chiropractor,[3] the ALJ assigned "little weight" to their opinions, articulating his reasoning as follows:

> The undersigned has considered the statements from Dr. Walsh and Dr. Lane, but gives their conclusions little weight because they were not accompanied by supportive specific clinical findings or laboratory test results, and because the totality of the evidence does not support them. Additionally, the issue of disability is an administrative finding based on the rules and guidelines set forth by federal regulations, and is ultimately reserved to the Commissioner.

ECF No. 10-9 at 24 (internal record citations omitted).

The Court disagrees with Plaintiff and finds that the ALJ properly evaluated and assigned Dr. Walsh and Dr. Lane's opinions little weight because they were inconsistent with objective medical evidence in the record. *See id.* Contrary to Plaintiff's assertion that the ALJ erred by failing to consider the factors laid out in 20 C.F.R. §§ 404.1527(c) and 416.927(c) when determining how much weight to assign to Dr. Walsh and Dr. Lane's medical opinions, the ALJ was under no obligation to specifically enumerate each of the six factors described in the Social Security regulations; the regulations require only that "good reasons" be provided for the weight

---

[3] The Court notes that, as a chiropractor, Dr. Lane is not considered an acceptable medical source according to 20 C.F.R. § 404.1502(a) and is, therefore, not a treating source. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

10

given to a treating physician's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Baxter v. Astrue*, No. SKG-10-3048, 2012 WL 32567, at *6 (D.Md. Jan. 4, 2012) ("Nothing in § 404.1527(d)(2) requires an express discussion of each factor. Although the Fourth Circuit has not yet addressed whether an ALJ must explicitly analyze every factor, several district courts within the Fourth Circuit have not found such a requirement." (internal citations omitted)).

Here, the ALJ specifically explained that the opinions of Dr. Walsh and Dr. Lane were not supported by objective medical evidence and cited to substantial evidence in the record to support his finding. ECF No. 10-9 at 24. Specifically, the ALJ cited evidence demonstrating: an absence of a persisting cerebrospinal fluid leak, ECF No. 10-8 at 25, 42, 123, 126; intact neurological and motor examination findings, *id.* at 18, 25, 39–40; ECF No. 10-14 at 191, 429, 448; only mild, degenerative changes in Plaintiff's back and neck, ECF No. 10-8 at 50–51, 519–20; ECF No. 10-14 at 190–91, 470, 472; no demonstrable vestibular symmetry in function, ECF No. 10-14 at 68; and normal balance, *id.* at 77. Such evidence contradicts Dr. Walsh and Dr. Lane's opinions that Plaintiff suffered from a cerebrospinal fluid leak, severe neck and back pain, spinal disfunction, and issues with vestibular function. *See id.* at 2–3. Consequently, the Court finds that the ALJ's reasoning for assigning Dr. Walsh and Dr. Lane's opinions little weight was articulated in the ALJ's written decision and supported by good reasons and substantial evidence in the record.

*Opinions of State Agency Medical Consultants*

After reviewing the findings of the state agency medical consultants, the ALJ assigned "significant weight" to their opinions, articulating his reasoning as follows: "[T]he undersigned gives significant weight to the opinion of the DDS medical consultants that [Plaintiff] can perform work activities in the 'light' exertional range, as this conclusion is consistent with objective findings of normal muscle strength, a normal gait and normal sensation." ECF No. 10-9 at 23.

11

The Court again disagrees with Plaintiff and finds that the ALJ properly evaluated and assigned the state agency medical consultants' opinions significant weight because they were supported by and consistent with objective medical evidence in the record. *See id.* In the narrative discussion, the ALJ repeatedly noted findings demonstrating mostly intact and fully intact motor strength and sensation and normal gait. *Id.* at 21–22; ECF No. 10-8 at 177, 181, 519; ECF No. 10-14 at 191, 419. Such evidence supports the state agency medical consultants' opinions.

Plaintiff contends that the state agency medical consultants' opinions are not consistent with the record as a whole because they were rendered in 2014 and did not take into account subsequent test results demonstrating "extensive motor loss" in 2015. ECF No. 16-2 at 19–22. However, "a medical opinion is not invalidated simply because it does not account for all subsequent developments." *Dunn v. Comm'r, Soc. Sec. Admin.*, No. SAG-11-2217, 2013 WL 822383, at *4 (D.Md. Mar. 4, 2013). Moreover, the subsequent objective medical evidence does not reveal "extensive motor loss," as Plaintiff contends. Rather, the examinations cited by Plaintiff demonstrate nearly intact motor strength, with a motor grade of 4/5 in the right piriformis, right gluteus maximum, left trapezius (lower division), left rhomboid major, right rhomboid major, left levator scapula, left deltoid (middle division), left deltoid (anterior division), left coracobrachialis, left biceps brahii, right quadratus lumborum, and left peroneal group, as well as full 5/5 motor strength in all other muscles. ECF No. 10-14 at 135, 139–40, 143, 147, 151, 155, 159–60, 163, 167. Consequently, the Court finds that the ALJ's reasoning for giving the state agency medical consultants' opinions significant weight was articulated in the ALJ's written decision and supported by good reasons and substantial evidence in the record.

2. The ALJ Properly Evaluated Plaintiff's Credibility.

Next, Plaintiff asserts that the ALJ's adverse credibility determination is not supported by substantial evidence because the ALJ applied an improper legal standard to discredit Plaintiff's subjective symptoms in violation of *Lewis v. Berryhill*, 858 F.3d 858 (4th Cir. 2017). ECF No. 16-2 at 23–26. Defendant contends that the ALJ identified proper bases beyond objective evidence to support his credibility findings, which included Plaintiff's treatment history, the nature of her symptoms, and her daily activities. ECF No. 17-1 at 17. The Court agrees with Defendant.

The United States Court of Appeals for the Fourth Circuit laid out the two-step process for evaluating whether a person is disabled by pain and other symptoms under 20 C.F.R. §§ 404.1529 and 416.929:

> Under the regulations implementing the [Act], an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects.

*Lewis*, 858 F.3d at 865–66 (internal citations omitted); *see also Craig*, 76 F.3d at 594 (describing the two-step process). At the second stage, the ALJ must consider all the available evidence, including the claimant's medical history, medical signs, statements by the claimant and her treating or examining physicians, objective medical evidence of pain, and any other information proffered by the claimant. 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *1–12 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as

13

the claimant's ability to perform daily activities, activities that precipitate or aggravate the symptoms, medications and treatments used, and other methods used to alleviate the symptoms. *Id.* at *6.

In addition, the ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims regarding her pain symptoms can reasonably be accepted. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Subjective symptoms of pain, standing alone, cannot sustain a finding of disability and a claimant must substantiate her allegations of pain. 20 C.F.R. §§ 404.1529, 416.929; *see also Mickles v. Shalala*, 29 F.3d 918, 923 (4th Cir. 1994) (stating that pain may render claimant incapable of working independent of any physical limitation, but allegations of pain alone are insufficient to find a disability). "According to the regulations, the ALJ 'will not reject [a claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [the claimant's] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements.'" *Lewis*, 858 F.3d at 866 (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)). The ALJ, therefore, is required to make a finding regarding a claimant's credibility and should specifically refer to the evidence supporting that finding, *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (per curiam), but the ALJ cannot discount Plaintiff's subjective evidence of pain solely based on objective medical findings, *Lewis*, 858 F.3d at 866 (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)).

In the present case, the ALJ appropriately recognized his obligation to properly evaluate the credibility of Plaintiff's testimony with regard to her symptoms and the restrictions caused by her impairments in accordance with 20 C.F.R. §§ 404.1529 and 416.929. After analyzing the evidence in the record, the ALJ concluded that Plaintiff's medically determinable impairments

could reasonably be expected to cause her alleged symptoms, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully consistent with the evidence of record." ECF No. 10-9 at 23.

First, the ALJ summarized Plaintiff's testimony at the hearing, acknowledging Plaintiff's testimony about the symptoms and pain caused by her physical and mental impairments. *Id.* at 19–20. However, the ALJ then stated:

> The medical records confirm that [Plaintiff] has a combination of physical and mental impairments, which combine to cause significant functional limitations; however, the test results, the findings from examinations and the objective findings from psychiatric and psychological evaluations do not fully support the degree of limitations in walking, standing, sitting and lifting [that Plaintiff] reports. Additionally, the evidence related to the mental impairments does not fully support the severity of mental problems [Plaintiff] described.

*Id.* at 20. The ALJ further described Plaintiff's medical history, including "test results documenting mild degenerative changes and objective findings of a normal gait, normal strength and normal sensation," "physical examinations [that] did not support the frequency or severity of impaired balance," and psychiatric and psychological examinations which "have not revealed the degree of psychological symptoms [Plaintiff] reports." *Id.* at 22–23.

While the ALJ impermissibly relied on some objective medical evidence, he also relied on sufficient subjective evidence to find that Plaintiff was not credible. The ALJ referenced Plaintiff's own testimony regarding her "ability to live alone and take care of her personal needs, with some help from her daughter" and her "ability to drive" and found that these activities were "not consistent with [Plaintiff's] complaints of 'disabling' physical pain, depression and symptoms of ADHD" or "with [her] report of being unable to maintain focus for most activities." *Id.* at 23.

15

Additionally, in accordance with 20 C.F.R. §§ 404.1529 and 416.929, the ALJ also considered Plaintiff's history of treatment and medication. *Id.* at 22–23. As to Plaintiff's physical impairments, the ALJ observed that "there was no indication that [Plaintiff] required an assistive device for ambulation" and that she "reported doing well with physical therapy." *Id.* at 22. With respect to Plaintiff's mental impairments, the ALJ noted that "although [Plaintiff] takes medication for ADHD, she has not required significant psychiatric or psychological treatment" and "[t]here is no convincing evidence of significantly adverse side effects from the use of prescribed medications." *Id.* at 23. Thus, the ALJ's detailed evaluation of the record evidence against Plaintiff's statements regarding her symptoms amply supports the ALJ's conclusion that Plaintiff's alleged limitations were not entirely credible, and the ALJ properly evaluated Plaintiff's credibility, supporting his findings with substantial evidence consistent with 20 C.F.R. §§ 404.1529 and 416.929.

3. The ALJ Improperly Assessed Plaintiff's RFC.

Where a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must then assess the claimant's RFC. RFC assesses "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. pt. 404, subpt. P, app. 2, 200.00(c). Plaintiff argues that the ALJ, in determining Plaintiff's RFC, failed to explain how he determined that Plaintiff would be "on task 85% or more of the workday." ECF No. 16-2 at 10 (quoting ECF No. 10-9 at 19). The Court agrees and remands to allow the ALJ to fulfill the duty of explanation on this issue.

In determining RFC specifically, an ALJ must take into account the entire record, opinion evidence, impairments that are not severe, and any limitations the ALJ finds. 20 C.F.R. §§ 404.1545(a), 416.945(a) (ordering the ALJ to consider the entire record); SSR 96-8p, 1996 WL

374184, at *2 (defining the RFC as an assessment of an individual's ability to perform vocational-related physical and mental activities). Furthermore, it is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

Social Security Ruling ("SSR") 96-8p provides the proper framework for evaluating a claimant's RFC. Specifically, the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (footnote omitted). Furthermore, "[t]he Ruling instructs that the [RFC] 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations. Only after that may [the RFC] be expressed in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (footnote omitted) (quoting SSR 96-8p, 1996 WL 374184).

During his step four evaluation, the ALJ determined that Plaintiff could "perform light work" but included the following limitations: "[Plaintiff] is limited to the performance of routine, repetitive tasks. [Plaintiff] must avoid unprotected heights and dangerous machinery. [Plaintiff] can bend, stoop or squat occasionally. [Plaintiff] will be on task 85% or more of the workday." ECF No. 10-9 at 19. The ALJ, however, failed to explain the finding that Plaintiff would be off

17

task 15% of the workday. *Id.* Indeed, the only mention of that percentage, other than in the RFC assessment, is in the following sentence: "The undersigned gives [Plaintiff] the benefit of every doubt by including a finding in the RFC that she will be off task 15% or less of the workday." *Id.* at 24. While some of the evidence described by the ALJ notes difficulty in Plaintiff's ability to focus, concentrate, and stay on task, *id.* at 22, the majority of the evidence cited suggests that Plaintiff's ability to stay on task is intact, *id.* at 22–23 (citing examinations stating Plaintiff's "attention span was normal," "attention/concentration was intact," and "attention was normal"). It is unclear why the ALJ included the finding that Plaintiff would be off task 15% of the workday in the first place, and the lack of connection between that finding and the factual findings warrants remand. *See Kane v. Comm'r, Soc. Sec. Admin.*, No. SAG-17-1252, 2018 WL 2739961, at *2 (D.Md. May 14, 2018) (ordering remand where the ALJ provided no explanation for the conclusion that the claimant would be off-task 10% of the workday).

Moreover, the ALJ's failure to explain this finding is particularly concerning because the ALJ considered the vocational expert's testimony that if Plaintiff were only off task 15% of the day, there would be jobs available that she could perform, but if she were to be off task more than 15% of the day, there would not. ECF No. 10-9 at 58. "Thus, the assignment of a precise percentage of time off-task constituted a critical part of the disability determination" but "the ALJ failed to explain how he reached the conclusion of [15]%." *Kane*, 2018 WL 2739961, at *2. In light of this inadequacy, the Court must remand the case to the SSA for further analysis.

## Conclusion

In summation, the Court finds that the ALJ improperly found that Plaintiff was "not disabled" within the meaning of the Act from September 27, 2013 until January 22, 2016. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to

inadequate analysis. Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 16) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 17) is DENIED, and the decision of the SSA is REMANDED for further proceedings in accordance with this opinion. In so holding, the Court expresses no opinion as to the ALJ's ultimate disability determination. The clerk is directed to CLOSE this case.

Date: 24 April 2019

A. David Copperthite
United States Magistrate Judge